# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00511-COA

IN THE MATTER OF THE ESTATE OF JOHN          APPELLANT
M. KAYE, DECEASED: JOHN MORGAN KAYE
JR., EXECUTOR

v.

PATRICIA M. KAYE          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/20/2017 |
| TRIAL JUDGE: | HON. H. J. DAVIDSON JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DEWITT T. HICKS JR. |
| ATTORNEY FOR APPELLEE: | HAL H. H. MCCLANAHAN III |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 10/02/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., WILSON AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     John Morgan Kaye Jr. (John), as executor of the Estate of John M. Kaye (Jack), deceased, filed a petition to recover assets and for other relief against Patricia M. Kaye (Pat), Jack's wife, in the Lowndes County Chancery Court. Although neither the will nor Pat's power of attorney was contested, John claimed that Pat's inheritance should be rendered void because a confidential relationship existed between Jack and Pat. The chancellor found that no confidential relationship or fiduciary duty existed between Jack and Pat nor was there any undue influence exerted by Pat over Jack. John appeals. Finding no error, we affirm.

## FACTS

¶2.     Jack and Pat married in 1987 and remained married until Jack's death on January 20, 2012. Both Jack and Pat had children from previous marriages. Jack had two sons, John and William Samuel Kaye, as well as a daughter, Louise Harlan Kaye.

¶3.     In early 2006, Jack fell backward down fourteen steps at his home. After his fall, in August 2006, Jack created a will. Instead of using Hunter Gholson, his long-term attorney, Jack switched his services to Hal H. H. McClanahan, Pat's attorney, because she believed Gholson's fees were too high. In his uncontested will, Jack left John, John's three sons, and Pat each one-fifth of his estate. Jack also devised Pat their marital home with all furnishings. In his will, Jack stated that he did not split the estate with William or Louise because William is independently wealthy and Louise, who is mentally handicapped, has a trust. On the same day Jack created the will, he executed a Power of Attorney appointing Pat as his attorney in fact.

¶4.     In February 2007, Jack fell again and broke his hip. After this fall, Jack was placed in Trinity Place for rehabilitation. After an incident with the staff, Jack returned home. During this time, Jack was regularly treated by his physician, Dr. Frank Dailey. Dr. Dailey treated Jack from 2006 until his retirement in 2008.

¶5.     In 2008, Jack created a joint account with Pat that included rights of survivorship. In 2009, Jack authorized UBS to transfer all assets from his solo account to the joint account. This authorization gave Pat the right to make decisions and jointly access the funds. Because Jack did not execute the document at the UBS office, he had the form notarized by Marilyn Reaves at a Regions Bank and sent back to UBS. Reaves testified that Jack alone came into

2

the bank and signed the forms. Furthermore, she stated that she did not recall anyone accompanying Jack to the bank.

¶6. After Jack's death in 2012, his will was admitted to probate, and it was discovered that minimal funds remained in the UBS account. John brought an action against Pat claiming wrongful conversion. While John decided not to contest the will or the Power of Attorney, he requested the chancery court deny her assignment from the will: her fifth of the estate and the marital home. He also requested that the court require Pat to return the joint account to the amount of $1,210,371.91.

¶7. The chancellor court found that Pat committed no wrongdoing. John timely appeals.

## STANDARD OF REVIEW

¶8. "The standard of review of chancery matters is limited." *Estate of Langston v. Langston*, 141 So. 3d 28, 31 (¶7) (Miss. Ct. App. 2014).[1] "We will not disturb a chancellor's factual findings that are supported by substantial evidence." *Id.* "The chancellor's decision

---

[1] The *Langston* estate matters have had a long history in the Court of Appeals and the Mississippi Supreme Court. A case regarding the same estate was first raised on appeal to this Court in 2010, after a chancery court determined that a confidential relationship between spouses existed, and therefore set aside the creation of certain joint tenancies. *In re Estate of Langston*, 57 So. 3d 657, 663 (¶28) (Miss. Ct. App. 2010). In a five-to-four decision, this Court opined that the chancellor's automatic presumption of undue influence solely based on the existence of a confidential relationship was improper, ultimately reversing and rendering the chancery court's holding void. *Id.* In 2011, the Mississippi Supreme Court decided to review the case on a writ of certiorari. *Estate of Langston v. Williams*, 57 So. 3d 618 (Miss. 2011). The Supreme Court held that a confidential relationship between spouses does not create a presumption of undue influence in inter vivos transfers, affirmed the Court of Appeals in part and reversed the Court in part, remanding the case to the chancery court for a new trial. *Id.* at 622 (¶18). In the second trial, the chancery court found no undue influence and therefore upheld the inter vivos gifts, and on appeal this Court affirmed. *Estate of Langston v. Langston*, 141 So. 3d 28 (Miss. Ct. App. 2014).

will be affirmed unless the chancellor abused [his] discretion, was manifestly wrong, or [his] findings were clearly erroneous, or [he] applied an erroneous legal standard." *Id.* "We review questions of law de novo." *Id.*

## DISCUSSION

¶9.     John raises four issues on appeal. First, he asserts that the chancellor committed manifest error in failing to find that a close relationship existed. Second, he asserts that the chancellor failed to apply established caselaw that when a close relationship exists in an inter vivos transfer the presumption of undue influence is established. Third, he asserts that the chancellor failed to shift the burden to the inter vivos grantee/beneficiary to prove by clear and convincing evidence the transfer was valid. Last, he asserts that the chancellor failed to apply the correct legal standard regarding the presumption of undue influence.

¶10.     In his principal brief, John asserts there is a confidential relationship between Pat and Jack proven through the seven *Dabney* factors.[2] The Mississippi Supreme Court describes a confidential relationship as:

> [A] relation[ship] between two people in which one person is in a position to exercise a dominant influence upon the other because of the latter's

----

[2] These factors include:

(1) [W]hether one person has to be taken care of by others, (2) whether one person maintains a close relationship with another, (3) whether one person is provided transportation and has their medical care provided for by another, (4) whether one person maintains joint accounts with another, (5) whether one is physically or mentally weak, (6) whether one is of advanced age or poor health, and (7) whether there exists a power of attorney between the one and another.

*In re Estate of Dabney v. Hataway*, 740 So. 2d 915, 919 (¶12) (Miss. 1999).

4

dependency upon the former, arising either from weakness of mind or body, or through trust, the law does not hesitate to characterize such relationship as fiduciary in character. The dependency factor was emphasized again when we stated, "In determining whether or not a fiduciary or confidential relationship existed between two persons, we have looked to see if one person depends upon another."

*In re Caspelich*, 22 So. 3d 1199, 1205 (¶20) (Miss. Ct. App. 2009) (quoting *Madden v. Rhodes*, 626 So. 2d 608, 617 (Miss. 1993)). Morever, this Court has held that "a confidential relationship between spouses does not create a presumption that one spouse used undue influence over the other to obtain an inter vivos gift." *Estate of Langston v. Langston*, 141 So. 3d 28, 31 (¶9) (Miss. Ct. App. 2014). Although "[i]t is undoubtedly true that a husband or a wife may exercise undue influence upon the other spouse . . . it is the contestant's burden to show that the surviving spouse used undue influence." *Id.* (internal quotation mark omitted). So, regardless of whether there was a confidential relationship because of Jack and Pat's status as husband and wife, it is John's burden to prove that Pat used undue influence in Jack's creation of the joint account.

¶11. This Court has held that "[w]ith regard to both testamentary and inter vivos gifts, undue influence will be found where a spouse has used undue methods for the purpose of overcoming the free and unrestrained will of the other spouse, so as to control his or her acts and to prevent him or her from being a free agent." *Id.* (internal quotation mark omitted). Here, it seems that Jack was "a free agent." *Id.* The chancellor considered the testimonies of many witnesses including John, Jack's friends, UBS representatives, and the notary public. Additionally, he considered the physical evidence, especially considering the fact that the majority of the funds in the account were used while Jack was still alive for the couples'

5

medical and living expenses. Furthermore, testimony shows that Jack spoke with the UBS representative about creating the joint account, and it was Jack alone who went to the notary to transfer the funds from his solo account to the joint account.

¶12. After review of the record, we, like the chancellor, find this evidence unpersuasive to prove that Pat used undue influence in the creation of the joint account. Accordingly, we affirm the chancery court's decision.

¶13. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., FAIR, WILSON, GREENLEE AND TINDELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**